UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

MORGAN E. PHELPS,

Plaintiff,

v. 5:26-CV-1376
(GTS/CBF)

CITY OF OSWEGO; CITY OF OSWEGO POLICE DEPARTMENT; OFFICER BRIAN GRAVES, in his individual and official capacities; OFFICER STEPHEN WEBER, in his individual and official capacities; and OFFICER ANDREW GOLDEN, in his individual and official capacities,

Defendants.

---

APPEARANCES: OF COUNSEL:

HOFFMANN, HUBERT & HOFFMANN LLP TERRANCE J. HOFFMANN, ESQ.
Counsel for Plaintiff
4629 Onondaga Boulevard
Syracuse, New York 13219

SPICER LAW OFFICE LEWIS G. SPICER, ESQ.
Co-counsel for Plaintiff
120 East Washington Street, Suite 327
Syracuse, New York 13202

MURPHY BURNS GROUDINE LLP STEPHEN M. GROUDINE, ESQ.
Counsel for Defendants
407 Albany Shaker Road
Loudonville, New York 12211

GLENN T. SUDDABY, United States District Judge

# DECISION and ORDER

Currently before the Court, in this civil rights action filed by Morgan E. Phelps ("Plaintiff") against the City of Oswego ("City"), the City of Oswego Police Department ("Department"), Officer Brian Graves, Officer Stephen Weber, and Officer Andrew Golden

(collectively "Defendants") is Defendants' motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 5.) For the reasons set forth below, Defendants' motion is granted. However, Plaintiff is granted leave to file the proposed amended complaint. (Dkt. No. 10, Attach. 1).

## I. RELEVANT BACKGROUND

### A. Plaintiff's Claims

Liberally construed, Plaintiff's Complaint alleges that, on February 13, 2025, at approximately 1:05 P.M., along East 11th Street in Oswego, New York, the Defendant officers initiated a traffic stop of Plaintiff's vehicle. (Dkt. No. 2, at ¶ 7.) The officers ordered Plaintiff to step out of her vehicle, during which an altercation between Plaintiff and the officers ensued. (*Id.*, at ¶ 8.) Among other injuries, Plaintiff alleges she suffered a resulting left humerus fracture. (*Id.*.) The officers cited Plaintiff for failing to signal a turn under one hundred feet (N.Y. Vehicle & Traffic Law § 1163[b]), and second-degree obstruction of governmental administration (N.Y. Pen. Law § 195.05), both of which charges were later dismissed. (*Id.*, at ¶¶ 10-11.) Plaintiff was also charged with seventh-degree possession of a controlled substance (N.Y. Pen. Law § 220.03), a misdemeanor to which she pled guilty in Oswego City Court. (*Id.*, at ¶ 12.)

Plaintiff asserts the following six causes of action against Defendants: (1) assault and battery under New York State Law; (2) intentional infliction of emotional distress ("IIED") under New York State Law; (3) negligent infliction of emotional distress ("NIED") under New York State Law; (4) negligence under New York State Law; (5) excessive force in violation of Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983; and (6) vicarious liability against Defendant City and

Defendant Department as to the state law claims. (*See generally* Dkt. No. 2.) Familiarity with all other factual allegations supporting these claims in the Complaint is assumed in this Decision and Order, which is intended primarily for review by the parties.

**B. Summary of Parties' Arguments on Defendants' Motion to Dismiss**

**1. Defendants' Memorandum of Law**

Generally, in support of their motion to dismiss, Defendants assert the following five arguments: (1) Plaintiff engages in group pleading that fails to identify which Defendant was involved in what unlawful conduct, and fails to provide sufficient factual allegations regarding the context in which the use of force arose to plausibly suggest that the force used was excessive; (2) Plaintiff's assault and battery claims are conclusory and duplicative of her excessive force allegations; (3) Plaintiff's claims of IIED and NIED are equally conclusory and duplicative, and Plaintiff fails to establish the requisite "extreme and outrageous conduct" as to her IIED claim; (4) Plaintiff's negligence claim is also conclusory in that she fails to sufficiently plead the existence of a relevant legal duty, and must be dismissed also because she has already alleged that the Defendant officers' conduct was intentional and conduct cannot be simultaneously intentional and negligent; and (5) Plaintiff fails to allege any claims against Defendant City and Defendant Department or to plead vicarious liability against them for the Defendant officers' conduct, and Defendant Department must also be dismissed because it is not a separate legal entity from the City of Oswego and therefore cannot be sued. (*See generally* Dkt. No. 5, Attach. 1.)

**2. Plaintiff's Opposition Memorandum of Law**

Generally, in Plaintiff's response to Defendants' motion, she asserts the following three

arguments: (1) the facts alleged in the Complaint plausibly suggest that the use of force by the Defendant officers was not objectively reasonable; (2) her assault and battery claims can be permitted to proceed alongside her excessive force claim; and (3) her negligence claim may properly be brought along with the intentional tort claims, and, because she has plausibly alleged that the Defendant officers both owed her a duty of care and breached that duty, that claim has been adequately pleaded. (*See generally* Dkt. No. 10.) In addition, Plaintiff requests leave to file a proposed amended complaint, which primarily clarifies how Plaintiff behaved during the encounter and distinguishes the Defendant officers' individual roles during the alleged altercation underlying Plaintiff's claims. (Dkt. No. 10, Attach. 1.)

### 3. Defendant's Reply Memorandum of Law

Generally in their reply, Defendants assert the following three arguments: (1) neither Plaintiff's response nor the allegations in the proposed amended complaint cure any of the existing factual deficiencies pertaining to the excessive force claim; (2) Plaintiff's choice not to take any position regarding the claims of IIED and NIED as well as her claims against Defendant City and Defendant Department constitute an abandonment of those claims, despite the fact that Plaintiff has retained those claims in the proposed amended complaint, and, to the extent Plaintiff has not intended to abandon those claims, they nevertheless must be dismissed for the reasons already discussed in Defendant's initial memorandum of law because the proposed amended complaint does not remedy the identified defects; and (3) Plaintiff is attempting to inappropriately recharacterize the officers' intentional acts as negligent conduct. (*See generally* Dkt. No. 11.)

## II. RELEVANT LEGAL STANDARDS

### A. Legal Standard Governing Motions to Dismiss for Failure to State Claim

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.*, 549 F. Supp.2d 204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp.2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp.2d at 212, n.17 (citing Supreme Court cases) (emphasis added).[1]

---

1 *Accord, Flores v. Graphtex*, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (Munson, J.); *Hudson v.*

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp.2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp.2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp.2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the

---

*Artuz*, 95-CV-4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998); *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y.1995) (McAvoy, C.J.).

pleading must contain at least "some factual allegation[s]." *Id*. at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S.Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[2]

---

[2] *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . . Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

### B. Legal Standards Governing Motions for Leave to Amend

A motion for leave to amend a complaint is governed by Fed. R. Civ. P. 15, which states that leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Manson v. Stacescu*, 11 F.3d 1127, 1133 (2d Cir. 1992). Pursuant to Fed. R. Civ. P. 15(a)(2), leave to amend a complaint should be freely given "[i]n the absence of any apparent or declared reason to not grant leave to amend[,] such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment...." *Foman,* 371 U.S. at 182; *S.S. Silberblatt, Inc. v. E. Harlem Pilot Block-Bldg. 1 Hous.*, 608 F.2d 28, 42 (2d Cir. 1979); *Meyer v. First Franklin Loan Servs., Inc.*, 08-CV-1332, 2010 WL 277090, at *1 (N.D.N.Y. Jan. 19, 2010) (Suddaby, J.); *Jones v. McMahon*, 98-CV-0374, 2007 WL 2027910, at *10 (N.D.N.Y. July 11, 2007) (Lowe, M.J.). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss...." *Annunziato v. Collecto*, Inc., 293 F.R.D. 329, 333 (E.D.N.Y. 2013) (citing *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 [2d Cir. 2002]).

## III. ANALYSIS

### A. Whether Plaintiff's Section 1983 Excessive Force Claim Should be Dismissed for Failure to State a Claim Upon Which Relief Can Be Granted

After carefully considering the matter, the Court answers the above question in the affirmative for the reasons stated in Defendants' memorandum of law. *See, supra,* I.B.1 and 3 of this Decision and Order. To those reasons, the Court adds the following points.

"Fourth Amendment claims of excessive force are governed by an objective reasonableness standard, such that no claim will lie when 'the force used by the officers was

objectively reasonable under the circumstances.'" *Jennings v. Decker*, 359 F. Supp. 3d 196, 205 (N.D.N.Y. 2019) (Kahn, J.) (quoting *Messina v. Mazzeo*, 854 F.Supp. 116, 128 n.6 [E.D.N.Y. 1994]). "To decide whether the force was reasonable, a court should pay careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the subject poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Hicks v. Craw*, 405 F. Supp. 3d 374, 381 (N.D.N.Y. 2019) (McAvoy, J.) (internal quotations omitted). This reasonableness must be judged "'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Cnty. of Los Angeles, California v. Mendez*, 581 U.S. 420, 428 (2017) (quoting *Graham v. Connor*, 490 U.S. 386, 396 [1989]). Moreover, a court must "view officers' actions 'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Cugini v. City of New York*, 941 F.3d 604, 612 (2d Cir. 2019) (quoting *Graham*, 490 U.S. at 396-97).

As an initial matter, the Court disagrees with Defendants that Plaintiff has engaged in improper group pleading. (Dkt. No. 5, Attach. 1, at 7.) "[G]roup pleading is generally impermissible because it 'provid[es] no factual basis to distinguish [each defendant's] conduct.'" *Worden v. Oneida County, et al.*, 25-CV-1234, 2026 WL 2641381, at *11 (N.D.N.Y. Sept. 8, 2026) (Brindisi, J.) (quoting *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 [2d Cir. 2001]). The relevant inquiry is whether a complaint "sufficiently alerts" the defendants of their individual conduct and the claims against them. *Archa v. New York*, 24-CV-677, 2025 WL 2371018, at *6 (N.D.N.Y. Aug. 14, 2025) (Scullin, J.). Here, the Complaint alleges "all three Defendant police officers" caused the "excessive and unnecessary physical force" Plaintiff

suffered. (Dkt. No. 2, at ¶ 8.) While this allegation alone reveals little about Defendants' specific use of force that Plaintiff alleges, Plaintiff states that "all three of the Defendant police officers" engaged in "violently pulling and twisting Plaintiff's arm and forcing Plaintiff against the trunk of her vehicle," before identifying that Officer Graves specifically punched her "left arm between the elbow and the shoulder" with a "closed fist" multiple times. (*Id.*) Plaintiff allegedly sustained a "snap" of her "left humerus bone" following this encounter with the Defendant officers. (*Id.*) The Court accepts the Complaint's references to the Defendant officers as a collective because all the Defendant officers were alleged to be "present and actively involved in the complained-of conduct." *Worden*, 2026 WL 2641381, at *11; *see also O'Brien v. City of Syracuse*, 22-CV-948, 2023 WL 6066036, at *8 (N.D.N.Y. Sept. 18, 2023) (D'Agostino, J.) (relying on the proposition that "in [a] situation involving alleged assault by a group of police officers or corrections officers, courts do not insist that the complaint set forth in detail the actions of each officer where it would be unreasonable to expect the plaintiff to be able to do so"). The Complaint allows for a plausible interpretation that all three officers contacted Plaintiff's left arm and held her against the rear of her vehicle, while Officer Graves specifically punched Plaintiff's left arm multiple times. Defendants therefore have fair notice of the claims against them related to the use of force.[1]

As to whether Plaintiff specifically stated a claim for excessive force, the allegations in the Complaint are notably sparse. Plaintiff alleges that the traffic stop during which the force occurred was "pre-textual" without providing any additional context (other than that she was

---

[1] The Court notes also that the proposed amended complaint provides further detail about the specific actions each Defendant officer engaged in that would cure any vagueness in the existing allegations as to the involvement of each individual Defendant officer.

eventually charged with certain violations and a misdemeanor, some of which were later dismissed), and her allegations regarding the use of force itself is limited to a single paragraph in which she provides the following details: (a) the force was "brutal," "unnecessary," and "excessive"; (b) the force consisted of the Defendant officers "violently pulling and twisting [her] arm and forcing [her] against the trunk of her vehicle" and of Defendant Graves punching her "multiple times on her left arm and elbow and the shoulder with a closed fist"; (c) this force began "within seconds" of her being advised that she was being detained; (d) she was never advised that she was being arrested or that she was going to be handcuffed before the use of force began; and (e) she did not "physically resist" and was not charged with resisting arrest. (Dkt. No. 2, at ¶ 8.) Although Plaintiff does describe the use of force itself in some detail, the context of how and why the Defendant officers used that force against Plaintiff is virtually unknown. Defendants argue that this lack of context, namely the failure to plead allegations concerning Plaintiff's compliance with police commands, possible attempts to flee, and physical movements after stepping out of the vehicle, precludes the Court from assessing the objective reasonableness of Defendants' actions. (Dkt. No. 5, Attach. 1, at 7-9.) However, the overall inability to fully assess the objective reasonableness of Defendants' conduct towards Plaintiff by just the Complaint, broadly, is not extraordinary, and is not a basis to dismiss a claim at the motion to dismiss stage given that the standard applicable on such a motion is merely that the claims asserted must be plausible. *See Chee War v. City of Utica, et al.*, 25-CV-824, 2026 WL 2516559, at *3 (N.D.N.Y. Aug. 26, 2026) (Scullin, J.) ("[C]ourts are rarely able to assess the reasonableness of the force used at the motion to dismiss stage."] [quoting *Hester-Bey v. Ford*, 13-CV-4656, 2015 WL 4910576, at *7 (E.D.N.Y. Aug. 13, 2015)]).

Nevertheless, a plaintiff must still provide "well-pleaded allegations." *Chee War*, 2026 WL 2516559, at *3. Here, as discussed, the Complaint cursorily describes the entire February 13, 2025, traffic stop in a single paragraph while omitting necessary details, such as Plaintiff's adherence to police commands, if any, or what her behavior was like after exiting the vehicle, as discussed above. (Dkt. No. 2, at ¶ 8.) Although Plaintiff alleges that she was advised that she was being detained before the force was used, she does not include any allegations whether Defendants did or did not issue any orders between the time she was ordered out of the car and when the force was used. She indeed does not even allege that she complied with the order to exit her car, merely that she at some point did end up outside her car. (*Id.*) Moreover, although Plaintiff alleges that she did not physically resist, she notably does not make any allegations regarding whether she at any point attempted to flee or whether whatever conduct she engaged in or comments she made to the Defendant officers could be reasonably construed as posing a threat to safety. (*Id.*) Because Plaintiff has provided only vague allegations relating to the context in which the force was used, she has not alleged facts to plausibly suggest that that force was excessive under the circumstances presented.

Finally, for purposes of assessing the objective reasonableness of any force the Defendant officers used, the Court is unconcerned with Plaintiff's personal history with Defendant Graves. (*Id.*, at ¶ 9.) Plaintiff does not here assert a constitutional claim based on the lawfulness of the traffic stop, but rather that the force used during that traffic stop was excessive, and therefore Plaintiff's allegation that Defendant Graves had a history of conducting traffic stops of her for personal reasons is of no moment to her federal claim. Moreover, because the assessment of whether the force used was reasonable is an objective one that is to be made without regard to

underlying intent or motivation, whether Defendant Graves had an ulterior motive for engaging in force against Plaintiff is immaterial; the proper question is whether the force was justified by the circumstances presented at the relevant time.

For these reasons, Plaintiff's claim for excessive force pursuant to 42 U.S.C. § 1983 is dismissed.

**B. Whether Plaintiff's Assault and Battery Claims Should be Dismissed as Duplicative of the Section 1983 Excessive Force Claim**

After carefully considering the matter, the Court answers the above question in the negative for the reasons stated in Plaintiff's memorandum of law. *See, supra,* Part I.B.2 of this Decision and Order. However, the Court finds that those claims should instead be dismissed for the same reasons as the excessive force claim.

**"**Under New York law, "[a]n 'assault' is an intentional placing of another person in fear of imminent harmful or offensive contact. A 'battery' is an intentional wrongful physical contact with another person without consent." *Girden v. Sandals Int'l*, 262 F.3d 195, 203 (2d Cir. 2001) (quoting *United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp.,* 994 F.2d 105, 108 [2d Cir.1993]).

As an initial matter, the Court rejects Defendants' argument that the state-law assault and battery claims must be dismissed as a matter of law because they are duplicative of the excessive force claim. Although it is true that a federal excessive force claim and a state-law assault/battery claim are "substantially identical" other than the requirement to show commission under the color of state law as to the federal claim, that fact does not mean that they cannot be separately maintained, particularly at this early stage in the proceedings before discovery has occurred. *See Michel v. City of Long Beach*, 25-CV-6426, 2026 WL 2322853, at *5 (E.D.N.Y. Aug. 11, 2026) (noting that the relevant case law showed that these claims generally should

stand or fall together*); see also Domkog Mo v. Rosselo, et al.*, 23-CV-1602, 2026 WL 2906476, at *11 (N.D.N.Y. Sept. 28, 2026) (Coombe, J.) (acknowledging that state law assault and battery claims are not inherently identical to a Section 1983 excessive force claim because that claim "has the additional requirement that it be committed under color of state law," and that, contrary case law notwithstanding, "it is well-established that a plaintiff may pursue a Fourth Amendment excessive force claim and state law assault and battery claims in the same action") (internal quotation marks omitted). Although courts within this district have found that, the above notwithstanding, assault and battery claims can be dismissed as duplicative where the claims arise from the same facts and seek identical damages, the Court notes that it has previously recognized that "generally, 'under New York state law, assault and battery claims are more plaintiff friendly … because under New York law if an arrest is determined to be unlawful, any use of force against a plaintiff may constitute an assault and battery, regardless of whether the force would be deemed reasonable if applied during a lawful arrest.'" *Smith v. City of Syracuse*, 24-CV-1523, 2026 WL 775946, at *10 n.17 (N.D.N.Y. Mar. 19, 2026) (Suddaby, J.) (quoting *Blot v. Town of Colonie*, 14-CV-0991, 2017 WL 61943, at *22 [N.D.N.Y. Jan. 5, 2017] [Suddaby, C.J.]). Here, although Plaintiff has not asserted a claim challenging the lawfulness of her arrest or the imposition of any charges against her, she has notably alleged that the initial traffic stop was "pretextual" and that she did not physically resist Defendant officers during that traffic stop, both of which at least plausibly suggest that there may be some doubt as to the propriety of the charges she received for a vehicle and traffic law infraction and obstruction of governmental administration. At the very least, this provides a reason for the Court to decline to dismiss the assault and battery claims on the basis of being duplicative at this current stage of the

proceedings.

That being said, apart from potential factual questions about the lawfulness of the arrest that may be relevant to Plaintiff's state law claims, her allegations in the Complaint show that these claims are premised on the same allegations as the Section 1983 excessive force claim, most notably the same use of force and the same context surrounding that use of force. (Dkt. No. 2, at ¶¶ 15-17.) As a result, the same pleading deficiencies in Plaintiff's allegations that were discussed related to the excessive force claim also apply to the assault and battery claims when assessing whether Plaintiff has plausibly alleged facts to state those claims for the purpose of the motion to dismiss.

For these reasons, Plaintiff's state law assault and battery claims must also be dismissed.

**C. Whether Plaintiff's Emotional Distress Claims Should be Dismissed**

After carefully considering the matter, the Court answers the above question in the affirmative for the reasons stated in Defendants' memoranda of law. *See, supra,* Part I.B.1 and 3 of this Decision and Order. Plaintiff "has not alleged any element of an intentional infliction of emotional distress claim that is different or in addition to what is recoverable under the traditional torts alleged." *Warr v. Liberatore*, 270 F. Supp. 3d 637, 655 (W.D.N.Y. 2017); *see also Farrell v. United States Olympic & Paralympic Comm.*, 20-CV-1178, 2026 WL 1960833, at *4 (N.D.N.Y. July 7, 2026) (Scullin, J.). Nor has Plaintiff shown that the requisite duty for claiming NIED was "specific to the plaintiff, and not some amorphous, free-floating duty to society." *Mortise v. United States*, 102 F.3d 693, 696 (2d Cir. 1996) (citing *Johnson v. Jamaica Hosp.,* 62 N.Y.2d 523, 526–27 [1984]). To those reasons, the Court adds the following points.

"Under New York law, the tort of IIED has four elements: '(1) extreme and outrageous

conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress.'" *Nelson v. Ulster Cnty., New York*, 789 F. Supp. 2d 345, 357 (N.D.N.Y. 2010) (Sharpe, J.) (quoting *Bender v. City of New York*, 78 F.3d 787, 790 [2d Cir. 1996]). "In addition to the legal elements shared with IIED, the tort of NIED is generally 'premised upon the breach of a duty owed to plaintiff which either unreasonably endangers the plaintiff's physical safety, or causes the plaintiff to fear for his or her own safety.'" *United States ex rel. Rubar v. Hayner Hoyt Corp.*, 306 F. Supp. 3d 478, 485 (N.D.N.Y. 2018) (Sharpe, J.) (quoting *Dawkins v. Williams*, 413 F.Supp.2d 161, 179 [N.D.N.Y. 2006] [Kahn, J.]).[2]

As an initial matter, the Court disagrees that Plaintiff abandoned the claims of IIED and NIED by virtue of Plaintiff's nonargument to Defendants' challenge to both claims. (Dkt. No. 10, at 4, n.1.)[3] "A federal court may deem a claim abandoned when a party moves to dismiss it and the opposing party fails to address the argument *in any way*." *Lobban v. Cromwell Towers Apartments, Ltd. P'ship*, 345 F. Supp. 3d 334, 343 (S.D.N.Y. 2018) (emphasis added); *see also Mid Atl. Framing, LLC v. Varish Constr., Inc.*, 13-CV-1376, 2016 WL 4919944, at *7 (N.D.N.Y. Sept. 14, 2016) (D'Agostino, J.) (citing cases). Traditionally, "failure to respond to the arguments raised means that the…Defendants' burden is lightened 'such that, in order to succeed

---

2 Although NIED claims have commonly been assessed as requiring a showing of extreme and outrageous conduct, it appears that New York courts have determined that such an element is not required. *See Brown v. New York Design Ctr., Inc.*, 215 A.D.3d 1, 7-8 (N.Y. App. Div. 1st Dept. 2023) (collecting cases from the Second, Third, and Fourth Departments, as well as the New York Court of Appeals).

3 Citation to specific page numbers refer to the header numbers generated by CM/ECF, not the pagination of the individual documents.

with regard to that argument, [Defendants] need show only that the argument possesses facial merit.'" *Wells v. Saratoga Hosp.*, 24-CV-0260, 2025 WL 391180, at *6 (N.D.N.Y. Feb. 4, 2025) (Suddaby, J.) (citing *Hogan v. Lewis Cnty.*, 16-CV-1325, 2018 WL 4689094, at *21 [N.D.N.Y. Sept. 28, 2018] [Kahn, J.]).

By electing to "take[] no position" on Defendants' challenge to the emotional distress claims, Plaintiff has failed to substantively respond to Defendants' arguments. Yet the Court is unaware of any precedent suggesting a party taking no position on an argument in opposition constitutes a failure to respond *per se* that should necessarily be construed as abandonment. Nevertheless, "Plaintiff['s] response fails to respond to Defendants' arguments *and address the applicable law*." *Allen v. Indivior Inc.*, 16-CV-01538, 2018 WL 3799905, at *7 (N.D.N.Y. Aug. 9, 2018) (Sannes, J.) (emphasis added). Although the Court disagrees that these claims are wholly abandoned, Defendants have thoroughly analyzed the viability of Plaintiff's emotional distress claims based on the "extreme and outrageous conduct" standard and whether Plaintiff has plausibly alleged that they owed Plaintiff any applicable duty. (Dkt. No. 5, Attach. 1, at 12-14.) Evaluated against the lightened burden Plaintiff's non-argument creates, *see Wells*, 2025 WL 391180, at *6, Defendants' arguments are compelling.

For these reasons, Plaintiff's claims for IIED and NIED are dismissed.

**D. Whether Plaintiff's Claim for Negligence Should be Dismissed**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendants' memoranda of law. *See, supra,* Part I.B.1 and 3 of this Decision and Order. To those reasons, the Court adds the following points.

As an initial matter, the Court accepts Defendants' assertion that allegations that

Defendants' relevant conduct related to the use of force was intentional forecloses any recovery from Defendants pursuant to a negligence theory based upon that same conduct. (Dkt. No. 5, Attach. 1, at 16.); *see Hansel v. Sheridan*, 991 F. Supp. 69, 76 (N.D.N.Y. 1998) (McAvoy, C.J.) ("Because plaintiff has brought excessive force and assault and battery claims addressing defendants allegedly unlawful use of force, the negligence claim must be dismissed."); *see also Maldonado v. Town of Greenburgh*, 18-CV-11077, 2025 WL 2105915, at *1 (S.D.N.Y. July 28, 2025) (finding that "Defendants are correct that 'under New York State law, when a plaintiff brings excessive force and assault claims which are premised on a defendant's allegedly intentional conduct, a negligence claim with respect to the same conduct will not lie'"); *Epps v. City of Schenectady*, 10-CV-1101, 2013 WL 717915, at *6 (N.D.N.Y. Feb. 27, 2013) (D'Agostino, J.) ("If the plaintiff alleges intentional conduct in support of a claim for excessive force or battery, he may not also base a claim for negligence on the same conduct."). To the extent Plaintiff's negligence claim is based on the use of force itself (i.e., the physical actions taken by the Defendant officers), that claim is deemed to be duplicative of the excessive force and assault and battery claims because the allegations related to that use of force cannot be reasonably construed as alleging negligent as opposed to intentional conduct. Specifically, Plaintiff alleges that the Defendant officers engaged in conduct including "violently pulling and twisting" her arm, "forcing" her against the trunk of her vehicle, and Defendant Graves punching her arm with a closed fist multiple times. (Dkt. No. 2, at ¶ 8.) Notably, however, Plaintiff's negligence claim does not frame the actual physical conduct itself as negligent, but rather alleges that the Defendant officers were negligent in failing to adhere to the "Use of Force Continuum" policy that was allegedly in effect at the time. Therefore, to the extent Plaintiff's negligence

claim may be premised on something slightly different than the use of force itself, the Court will assess whether Plaintiff has plausibly alleged facts to state that claim.

To the extent Plaintiff attempts to argue that Defendants breached their duty to Plaintiff, she misstates it as a "duty of ordinary care." (Dkt. No. 10, at 9-10.) Rather, because Plaintiff alleges that the Defendant officers were acting in their capacity as police officers for the City of Oswego at the relevant time,[4] "a plaintiff may not recover without proving that the municipality owed a 'special duty' to the injured party." *Velez v. City of New York*, 730 F.3d 128, 135 (2d Cir. 2013) (quoting *Valdez v. City of New York*, 18 N.Y.3d 69, 75 [2011]); *see also Ferreira v. City of Binghamton*, 38 N.Y.3d 298, 304 (N.Y. 2022) (indicating that "[c]onsistent with our precedent and the purposes of the special duty rule, we reiterate that plaintiffs must establish that a municipality owed them a special duty when they assert a negligence claim based on actions taken by a municipality acting in a governmental capacity," including "through its police force"); *Marino v. City of New York*, 223 A.D.3d 888, 889-90 (N.Y. App. Div. 2d Dept. 2024) ("Since the defendants were acting in a governmental capacity, the plaintiff was required to prove that the defendants owed him a special duty."). "The special duty rule provides that, '[t]o sustain liability against a municipality, the duty breached must be more than that owed the public generally.'" *Ferreira v. City of Binghamton*, 975 F.3d 255, 283 (2d Cir. 2020). "New York courts have recognized the existence of such a duty where either '(1) the plaintiff belonged to a class for whose benefit a statute was enacted; (2) the government entity voluntarily assumed a duty to the plaintiff beyond what was owed to the public generally; or (3) the municipality took

---

[4] (*See* Dkt. No. 2, at ¶¶ 3-5 [alleging that, as to the three Defendant officers, they were "at all times mentioned herein . . . acting as an agent of the Defendant, City of Oswego and City of Oswego Police Department"].)

positive control of a known and dangerous safety condition.'" *Ferreira*, 975 F.3d at 283-84 (quoting *Applewhite v. Accuhealth., Inc.*, 21 N.Y.3d 420, 430-31 [N.Y. 2013]).

Put simply, Plaintiff has not alleged facts plausibly suggesting that any of the foregoing points concerning the existence of a special duty have been met in this case. (*See generally* Dkt. No. 2; Dkt. No. 10.) As a result, Plaintiff's negligence cause of action must be dismissed.

Further, to the extent that Plaintiff's negligence claim is based on a negligent failure to adhere to the Department's "Use of Force Continuum" policy, Plaintiff has not provided sufficient allegations regarding the content of that policy from which the Court could determine that Plaintiff's allegations plausibly allege a deviation. As Defendants argue, Plaintiff has failed to "attach, quote, or describe the content" of the Department's "Use of Force Continuum" policy anywhere in the Complaint. (Dkt. No. 5, Attach. 1.) Plaintiff asserts in opposition that attachment of the policy is unnecessary because "it is axiomatic that all police departments maintain a use of force policy" governing how and when police officers can deploy force, and cites *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 231 (2d Cir. 2016), to support her contention that it was not necessary for her to attach that policy in order to overcome the motion to dismiss. (Dkt. No. 10, at 9-10.) *Nicosia* outlines the situations in which a court may properly consider materials that are outside the four corners of the complaint when deciding a motion to dismiss, which includes materials incorporated by reference or that are integral to the complaint. *Nicosia*, 834 F.3d at 230-31. However, whether the Use of Force Continuum is either incorporated by reference or integral to the Complaint is not the issue here, because the document itself has not been presented to the Court for consideration. The fact that a document could be integral to the complaint, or has been incorporated by reference, matters little when assessing the sufficiency of

the allegations in a complaint if that document has not been provided and there has been no indication of what the content of that document is, and it in no way relieves a plaintiff of the burden to allege facts to plausibly state the relevant claim. Defendants' position is persuasive in that, absent any indication of what the actual content of that policy is, Plaintiff is asking the Court to find that she has alleged that the Defendant officers violated the Department's internal policies without even outlining in the barest terms what those policies were. Because Plaintiff has not sufficiently alleged what standards to which the Defendant officers negligently failed to adhere, her negligence claim must also be dismissed to the extent it is based on that failure.

For these reasons, Plaintiff's claim for negligence is dismissed.

### E. Whether Plaintiff's Claims against the Municipal Defendants Should be Dismissed for Failure to Plead Vicarious Liability[5]

After carefully considering the matter, the Court answers the above question in the affirmative for the reasons stated in Defendants' memoranda of law. *See, supra,* Part I.B.1 and 3 of this Decision and Order. To those reasons, the Court adds the following points.

"Although a municipality cannot be held vicariously liable on a section 1983 claim, under New York state law, a municipality may be held vicariously liable on state law claims asserted against individual officers under a theory of respondeat superior." *Hulett v. City of Syracuse*,

[5] The Court notably does not construe the Complaint (or the proposed amended complaint) as attempting to assert a claim of municipal liability pursuant to Section 1983. Whereas Plaintiff asserts vicarious liability against Defendant City and Defendant Department as to each of the state law claims, there is no mention of those Defendants anywhere in the section of the Complaint related to the Section 1983 claim and, in the caption for that claim, asserts it against only the three Defendant officers "in their individual capacities." (Dkt. No. 2, at 9.) While these facts are enough to suggest that no federal municipal liability claim has been asserted, the Court also notes the absence of any attempt to plead the existence of a policy or practice as would be required for such a claim.

253 F. Supp. 3d 462, 502 (N.D.N.Y. 2017) (Hurd, J.). "This court has…held that '[u]nder New York law, the doctrine of *respondeat superior* renders an employer vicariously liable for a tort committed by an employee while acting within the scope of his employment." *Woodard for Lopes v. City of Syracuse*, 08-CV-00916, 2011 WL 13232548, at *1 (N.D.N.Y. June 16, 2011) (McCurn, J.) (quoting *Mingo v. U.S.*, 274 F.Supp.2d 336, 345 [E.D.N.Y. 2003]).

As an initial matter, Plaintiff indicates that she "takes no position" regarding Defendants' argument that the Complaint fails to state a vicarious liability claim against Defendant City and Defendant Department. (Dkt. No. 10, at 4, n. 1.) As discussed in Part III.C of this Decision and Order, this failure to oppose Defendants' argument on this matter lightens Defendants' burden such that their argument must only possess facial merit for this Court to accept them.

As to Defendant Department, the claim of vicarious liability must be dismissed as a matter of law. "[A] municipal police department does not have the capacity to be sued as an entity separate from the municipality in which it is located." *White v. Syracuse Police Dep't*, 18-CV-1471, 2019 WL 981850, at *3 (N.D.N.Y. Jan. 7, 2019) (Peebles, M.J.), *report and recommendation adopted*, 2019 WL 974824 (N.D.N.Y. Feb. 28, 2019) (Suddaby, C.J.). This is a brightline principle reiterated by courts throughout this District.

As to Defendant City, Plaintiff's claim of vicarious liability fails for the simple reason that, because the Court has already found that she has failed to state any claim upon which relief can be granted as to her state law claims against the Defendant officers, there is nothing at this juncture for which Defendant City could be held vicariously liable, and therefore that claim must also be dismissed. *See Triolo v. Nassau Cnty.*, 24 F.4th 98, 112 (2d Cir. 2022) (noting that, "[o]f course, when there is no underlying liability, there can be no vicarious liability").

For the above reasons, the claims against Defendant City and Defendant Department are dismissed

**F. Whether Plaintiff is Granted Leave to File an Amended Complaint**

After carefully considering the matter, the Court answers the above question in the affirmative for the reasons stated in Plaintiff's memorandum of law. *See, supra,* Part I.B.2 of this Decision and Order. To those reasons, the Court adds the following points.

"Where a plaintiff seeks to amend his complaint while a motion to dismiss is pending, a court 'has a variety of ways in which it may deal with the pending motion to dismiss, from denying the motion as moot to considering the merits of the motion in light of the amended complaint.'" *McRae v. City of Hudson*, 14-CV-236, 2015 WL 275867, at *3 (N.D.N.Y. Jan. 21, 2015) (Hurd, J.) (quoting *Roller Bearing Co. of Am., Inc. v. Am. Software, Inc.,* 570 F.Supp.2d 376, 384 [D.Conn.2008]). "Leave to amend a complaint 'shall be freely given when justice so requires.'" *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339 (2d Cir. 2000) (quoting Fed. R. Civ. P. 15[a]). Leave to amend may be denied, however, for reasons such as "'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment.'" *Mandala v. NTT Data, Inc.*, 88 F.4th 353, 362 (2d Cir. 2023) (quoting *Foman*, 371 U.S. at 182).

Here, Plaintiff has requested leave to amend the Complaint and annexed a proposed amended complaint to her response to Defendants' motion to dismiss. (Dkt. No. 10, Attach. 1). The proposed amended complaint adds the following allegations: "More particularly, Defendant Golden took hold of Plaintiff's right arm, while Defendant Webber violently pulled Plaintiff's

arm behind her back," (Dkt. No. 10, Attach. 1, at ¶ 9); "In fact, Plaintiff was, at all times, compliant with the Defendants' commands, she pulled her vehicle over timely, stepped out of the car when commanded, answered Defendants' questions and did not attempt to flee," (*Id.*, at ¶ 11); "…Importantly, Plaintiff was not charged with resisting arrest," (*Id.*, at ¶ 15); and she suffered "economic loss" in addition to the other relief previously sought. (*Id.*, at 11, section [a]). These allegations largely reflect greater detailing of the underlying physical contact between Plaintiff and the Defendant officers without substantively changing the causes of action or naming any new police officers. This weighs in favor of adopting the proposed amended complaint. *See Clark v. Dematic Corp.*, 14-CV-750, 2014 WL 6387166, at *2 (N.D.N.Y. Nov. 14, 2014) (Hurd, J.); *McRae*, 14-CV-236, 2015 WL 275867, at *3. In their reply, Defendants were able to review the proposed amended complaint and objected to its adoption for its failure to cure any of Plaintiff's deficient claims. (*See, generally,* Dkt. No. 10.) Thus, because there will be no "undue prejudice to [Defendants] by virtue of allowance of the amendment," *Foman,* 371 U.S. at 182, the Court is inclined to allow Plaintiff the opportunity to amend her Complaint as proposed.

Moreover, the Court finds that the proposed amended complaint cures the deficiencies related to Plaintiff's Section 1983 excessive force claim and her state claims for assault and battery on two grounds. First, Plaintiff's additional allegations detailing how Defendant Golden held Plaintiff's right arm while Defendant Weber "violently pulled Plaintiff's arm behind her back," (Dkt. No. 10, Attach. 1, at ¶ 9), better distinguish the Defendant officers' conduct during the February 13, 2025, traffic stop and illustrate the circumstances wherein Plaintiff ultimately suffered a broken left humerus. Additionally, Plaintiff's allegations that she complied with the

Defendant officers' directions and orders when signaled to pull over and when told to exit the vehicle, responded to the Defendant officers' questioning, and did not attempt to flee the scene provide additional context regarding whether the force was ultimately used was reasonable. (*Id.*, at ¶ 11). While there remains ambiguity about the timing of Defendants' contact with Plaintiff, namely how "immediately" the officers contacted her left arm once she exited the vehicle, the additional allegations in the proposed amended complaint provide a clearer image of the February 13, 2025, traffic stop and decidedly bolster the plausibility of Plaintiff's excessive force and assault and battery claims.

Permitting Plaintiff to file the proposed amended complaint does not, however, mean that her other dismissed claims discussed above will be revived. Plaintiff has not alleged any additional facts that would suggest that amendment would cure the deficiencies identified as to her claims for IIED, NIED, or negligence, or as to her claims against Defendant Department.[6]

For these reasons, the Court grants Plaintiff leave to file the proposed amended complaint.

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 5) is **GRANTED**; and it is further

**ORDERED** that all claims against Defendant City of Oswego Police Department are **DISMISSED**, and the Clerk of Court is directed to terminate that Defendant from this action; and it is further

[6] The vicarious liability claim against Defendant City would be permitted to proceed under the facts alleged in the proposed amended complaint because those amendments correct the deficiencies as to the state law assault and battery claims against the Defendant officers.

**ORDERED** that Plaintiff's request for leave to file the proposed amended complaint (Dkt. No. 10, Attach. 1) is **GRANTED**; and it is further

**ORDERED** that Plaintiff shall file the Amended Complaint within fourteen (14) days of the date of this Decision and Order.

Dated: October 28, 2026
Syracuse, New York

Glenn T. Suddaby
U.S. District Judge